S. E. Rand Transportation Company *vs.* Boston and Maine Railroad.

Essex.   October 8, 1930. — November 26, 1930.

Present: Rugg, C.J., Crosby, Pierce, Sanderson, & Field, JJ.

*Negligence*, Railroad: crossing tender. *Practice, Civil*, Exceptions.

At the trial of an action of tort against a railroad corporation for damage to an automobile of the plaintiff, resulting from its being struck by a train of the defendant, there was evidence that, on a night when a high wind was blowing fallen snow through the air, the automobile became stalled upon the defendant's tracks at their intersection at grade with the highway; that the engineer of the train could not see the crossing until the train came around a curve six hundred feet therefrom; that the driver of the automobile spent seven or eight minutes trying, without success, to start the automobile; that during that time a crossing tender on duty at the crossing told him that a train was due shortly and urged him to make haste in getting the automobile off the tracks; that, after the automobile had been on the tracks about six minutes, the crossing tender picked up a lantern and went almost forty feet up the tracks in the direction from which the train was approaching; and that the train collided with the automobile on the crossing less than a minute thereafter. The trial judge, without exception by the plaintiff, ruled that there was no evidence of negligence on the part of the engineer of the train, but denied a motion by the defendant that a verdict be ordered in its favor. Upon exceptions by the defendant after a verdict for the plaintiff, it was *held*, that

(1) It was not open to the plaintiff to contend that there was evidence of negligence on the part of the engineer;

(2) There was no evidence of negligence on the part of the crossing tender: he was not under an implied duty in the circumstances to

abandon for the time being his post at the crossing and his protection of the public approaching it in order to save the plaintiff's automobile;

(3) The defendant's exceptions were sustained and judgment was ordered to be entered in its favor.

TORT. Writ dated November 23, 1927.

The plaintiff's declaration was as follows:

"Count 1. And the plaintiff says that on or about the date of December 6, 1926, it was the owner of an automobile truck, so called, and that on or about said date said truck was being operated by the plaintiff, its agents or servants, the same being then and there in the exercise of due care, upon a public thoroughfare of this Commonwealth, known as the Newburyport Turnpike; that while said truck was being operated over a grade crossing, the same being in the control of the defendant, your plaintiff's automobile truck was struck and greatly damaged by reason of the negligent operation of a train by the agents and servants of the defendant; and the plaintiff further says that by reason of the negligence of the defendant, its agents or servants, it has been put to great expense for the repairs of said automobile truck; that the same has greatly depreciated in value, that your plaintiff was deprived of the use thereof for a number of days, wherefore it claims damages.

"Count 2. And the plaintiff further says that on or about the date of December 6, 1926, it was the owner of an automobile truck, so called, and that on or about said date said truck was being operated by the plaintiff, its agents or servants, the same being then and there in the exercise of due care, and while passing over a grade road of a public thoroughfare in this Commonwealth known as the Newburyport Turnpike, said truck was struck by a train, operated in a negligent manner by the defendant, its agents or servants, causing great damage to a load of produce and groceries; and the plaintiff further says that by reason of the negligence of the defendant, its agents or servants, said produce and groceries on said truck were greatly damaged and greatly depreciated in value, wherefore the plaintiff claims damages."

In the Superior Court, the action was tried before *F. T. Hammond,* J. Material evidence and rulings by the judge are stated in the opinion. There was a verdict for the plaintiff in the sum of $3,400. The defendant alleged exceptions.

*A. W. Rockwood,* for the defendant.

*L. J. MacNab,* for the plaintiff.

PIERCE, J. This is an action of tort to recover for damages to the plaintiff's automobile truck and the load of merchandise thereon. The accident occurred on December 6, 1926, at about 7:25 P.M., as the result of a collision between the truck and a Boston bound train consisting of a locomotive, two passenger coaches, a combination car containing both a smoking and a baggage compartment, and a baggage car, while the truck was stalled on a grade crossing of the tracks of the defendant over the Newburyport Turnpike in the town of Newbury.

At the close of the evidence the defendant filed a motion that a verdict be directed in its favor (*a*) upon the first count of the declaration and (*b*) upon the second count of the declaration. During the course of the argument of the defendant in support of its motion the trial judge ruled, without objection or exception by the plaintiff, that there was no evidence of negligence on the part of the defendant's engineer who was operating the locomotive. The defendant's counsel then contended that there was no evidence of negligence on the part of the defendant's crossing tender or gateman, and that, even assuming but not admitting there was such negligence, it would not support the case set out by the plaintiff's declaration for the reason that the negligence there alleged consisted in negligent operation of the train and not negligence of the crossing tender or gateman. The judge refused to grant the motion for a directed verdict and the defendant duly excepted.

After the denial of the defendant's motion it made, and the judge subject to the defendant's exception refused to grant, the following requests for rulings of law: " 6. There is no evidence to warrant the jury in finding that

any agent or employee of the defendant was negligent. 7. There is no evidence to warrant the jury in finding that the crossing tender was negligent." " 12. It cannot be claimed that the gate tender was negligent in not going a greater distance up the track to flag the train, for it was his duty to remain at the crossing." The defendant also duly excepted to that part of the judge's charge in which he permitted the jury to find negligence on the part of the defendant's crossing tender or gateman. The only question as to the defendant's liability which was submitted to the jury was whether or not the defendant's crossing tender or gateman was negligent. There is nothing in the record other than the answer of the defendant to indicate that an issue of the plaintiff's contributory negligence was submitted to the court or jury. The jury returned a verdict for the plaintiff on both counts.

The facts shown by the bill of exceptions which are material upon the question of law raised by the defendant's motion for a directed verdict and upon its requests for rulings of law are in substance as follows: On December 6, 1926, at about 5 P.M., an employee of the plaintiff left Boston to drive an automobile truck of the plaintiff loaded with fruit and groceries to Portsmouth, New Hampshire. There had been a rather heavy snow storm; the snow had drifted and was a foot deep in places as he went along the Newburyport Turnpike. He reached the grade crossing at Newbury shortly after 7 P.M. There, as he pulled to his right to permit an automobile to pass, his motor stalled with the front wheels of the truck just on the outside rail of the Boston bound track. There were three sets of rails at this crossing and the truck stalled on the outside rail. The turnpike near the crossing was a macadam roadway sixty feet wide, and was a heavily travelled thoroughfare with automobiles crossing at any time of the day or night. In cross-examination the plaintiff testified that it was fairly dark at the time; that there was a considerable quantity of snow on the ground, it had drifted and was a foot deep in places; that the

wind was blowing high and blowing the snow through the air and that the air was like a snow storm.

It was in evidence that the track upon which the collision occurred approached the grade crossing in a curve which was back about six hundred feet; that the engineer could not see the crossing or anything upon it on the side of the curve opposite from where he was sitting, until the engine came around the curve and straightened out on the straight track; that there were gates at the crossing, and when they were down flood lights attached to the under side of them illumined the crossing; that the train in question was about three hundred feet in length and of that length went two hundred forty feet after the collision.

There was also evidence that a crossing tender stood outside his cabin near the Boston bound track; that the truck did not have a self starter and the driver, when it stalled, got off, tried to crank it, took off his overcoat and again tried to do so, " in all he tried to crank his automobile truck ten or twelve times " without success and was seven or eight minutes in so doing; that during this time the gate tender told the driver that a train was due in a short time and urged him to hurry up and get his truck off the track so that the train could use the track; that after the truck had been on the track about six minutes the gateman picked up a lantern and started to the north, and that the collision took place in less than a minute thereafter. The truck driver testified that he did not see the train prior to the accident until the gateman told him it was coming down the straight track; it was then going thirty-five or forty miles an hour and was two or three hundred yards away. There was evidence that the gateman went about forty feet in the direction from which the train was coming and that the train struck the truck and completely destroyed it and the load of merchandise.

The possible issue of fact as to whether upon the evidence the engineer was guilty of negligence within the rule of law expressed in *Hunt* v. *Boston & Maine Railroad,*

250 Mass. 434, as the plaintiff contends he was, was foreclosed against it by the ruling of the trial judge, not excepted to by the plaintiff, that "as a matter of law . . . there was no evidence of negligence on the part of the defendant's engineer who was operating the locomotive." There is no evidence in the bill of exceptions that a ruling was made by the judge or requested by the plaintiff, that the defendant could be found to be negligent because of any failure on its part to provide rules for the conduct of its crossing tender in circumstances similar to those here presented, and such a question we put to one side. It follows that the only question before this court is, In the circumstances here disclosed, had the crossing tender a duty implied in the nature of his employment to leave the crossing and go up the track while the driver was endeavoring to crank his stalled car and, at the peril of default in that duty, to start early enough and proceed far enough to be reasonably certain that his signals would be observed by the engineer, and the train stopped? Except in most extraordinary conditions, we think a crossing tender, in the absence of instructions, had not an implied duty to leave his post at a crossing and abandon for the time being his protection of the public approaching from both directions at the crossing to save an automobile without passengers which is stalled upon the track but may at any moment be moved therefrom by the starting of its motor.

*Exceptions sustained.*
*Judgment for the defendant.*